# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | |
|---|---|
| **JERRY WAYNE SHEW,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| v.   ) | **Civil Action No. 5:05-0814** |
| ) | |
| **FCI BECKLEY,** ) | |
| ) | |
| **Defendant.** ) | |

## PROPOSED FINDINGS AND RECOMMENDATIONS

On October 5, 2005, Petitioner, an inmate at FCI Beckley, Beaver, West Virginia, and acting *pro se*, filed his Letter/Motion seeking an injunction against the Bureau of Prisons [BOP]. (Doc. No. 1.) Petitioner alleges that he was wrongfully disqualified from the Residential Drug Abuse and Treatment Program [RDAP] and requests that he be reinstated in the program. (Id.) The undersigned construes Petitioner's Letter/Motion as an Application for Writ of Habeas Corpus by a Person in Federal Custody under 28 U.S.C. § 2241.[1] By Standing Order also filed on October 5, 2005, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. No. 2.)

Pursuant to Rule 4 of the Rules Governing Section 2254 Proceedings in the United States District Courts, "[i]f it plainly appears . . . that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

notified." Having carefully examined the documents contained in the file and considered the applicable law, the undersigned finds that Petitioner is not entitled to *habeas* relief.

## **FACTUAL AND PROCEDURAL HISTORY**

On January 26, 1998, Petitioner pled guilty to conspiracy to possess a controlled substance in violation of 21 U.S.C. § 846 in the United States District Court for the Western District of North Carolina. See USA v. Seagraves, *et al.,* 5:97-cr-00246-2 (W.D.N.C. July 23, 1999). Petitioner was sentenced on June 30, 1999, and received a 135-month sentence of imprisonment, to be followed by a five-year term of supervised release. Id.

On October 5, 2005, Petitioner filed his Letter/Motion seeking an injunction against the BOP and reinstatement into the RDAP Program which the Court has construed as an Application for Writ of Habeas Corpus by a Person in Federal Custody under 28 U.S.C. § 2241. Petitioner essentially challenges the BOP's decision to remove him from the RDAP after he was initially deemed eligible to participate in the program. Petitioner states that he began the RDAP on April 25, 2005, but was later disqualified and removed from the RDAP program on July 22, 2005, after he was found ineligible because he was unable to submit appropriate documentation of substance abuse in the year prior to his incarceration. (Id. at 2, Exhibits AA and BB.) Petitioner contends that Program Statement 5330.10 does not contain the express eligibility requirement that he provide documentation of his abuse during the twelve months prior to incarceration and that staff could not produce any documentary proof that such a requirement existed. (Id. at 2.)

Petitioner initiated the Administrative Remedy Process on August 25, 2005, by submitting an Inmate Request to Staff form to Mr. J. Grimes, in which he requested that he be immediately

reinstated to the RDAP program. [2] (Doc. No. 1, Exhibit E.) By response dated August 31, 2005, J. Dwyer Ph.D., RDAP Coordinator, informed Petitioner that in order to be eligible to qualify for the RDAP program "[t]here must be documentation in the inmate's central file (or other appropriate documentation) to support an inmate's claims of substance abuse or dependence." (Doc. No. 1, Exhibit G.) Dr. Dwyer further advised that "[t]wo requirements for receiving a diagnosis of either substance abuse or dependence are (1) use of the substance during the year prior to incarceration, and (2) the use leading to clinically significant impairment or distress." (Id.) Dr. Dwyer noted that although Petitioner had submitted a psychological report dated June 27, 1985, which documented a diagnosis of alcohol and cocaine base, Petitioner failed to submit appropriate documentation of use of alcohol, cocaine, or any other substance in the year prior to his incarceration. (Id.) Dr. Dwyer further noted that Petitioner's Presentence Investigation Report did not mention any substance abuse or dependence problem. (Id.) Dr. Dwyer advised that "[w]ithout any other appropriate documentation, Mr. Shew does not meet the criteria for diagnosis of a substance abuse or dependence diagnosis, and is therefore unqualified to participate in RDAP." (Id.) Dr. Dwyer further informed Petitioner that although he was ineligible to participate in RDAP, he was still eligible to participate in the Non-residential Drug Abuse Program. (Id.)

On September 1, 2005, Petitioner filed his Request for Administrative Remedy (BP-9) to Charles C. Felts, Warden of FCI Beckley, requesting that he be immediately reinstated in RDAP. (Doc. 1, Exhibit H.) Petitioner contended that "[t]he plain language of Program Statement 5330.10 merely states that there must be a verifiable, documented drug abuse problem, and that 'there must

---

[2] It appears that Petitioner filed an Administrative Remedy request with the Regional Office on August 2, 2005. The remedy was denied because he failed to first file a BP-9 request at the institutional level. *See* Doc. No. 1, Exhibit C.

be verification in the PSI report or **other similar documents** (emphasis in the original) in the central file which supports the diagnosis.'" (Id.)  Petitioner stated that "[b]ased on information in the PSI and in collateral sources, sufficient documentation exists to support [his] admission into the 500-hour residential treatment program."  (Id.)  Petitioner states that his PSI indicates that he has two offenses for driving under the influence a few years prior to committing the underlying offense, that his neuropsychological evaluation cites alcohol and cocaine abuse, and that the Chief of Police of North Wilkesboro, North Carolina, indicated in a letter that he has personal knowledge of Petitioner's chronic difficulties with alcohol abuse during the year preceding his instant incarceration. (Id.)  Petitioner further argues that once staff authorized his admission into the RDAP progam, BOP officials were bound by the agreement to provide the treatment.  (Id.)

By response dated September 22, 2005, Warden Felts denied his request noting that although Petitioner had submitted a psychological report dated June 27, 1985, which documented a diagnosis of alcohol and cocaine abuse, he failed to submit any appropriate documentation of use of alcohol, cocaine, or any other substance prior to the year of his incarceration.  (Doc. No. 1, Exhibit I.) Warden Felts stated that with respect to Petitioner's initial enrollment and participation in the program, Petitioner was found eligible based on a misreading of his paperwork.  (Id.)  Warden Felts explained that "during a review of [his] chart approximately eight weeks later (June 17, 2005), it was determined that [his] diagnosis was in error based upon the documentation."  (Id.)  Warden Felts stated that Petitioner was immediately made aware of the problem and was offered an opportunity to remain in the program while he attempted to obtain appropriate documentation necessary to qualify for participation in the RDAP program.  (Id.)  Warden Felts stated that Petitioner was given a deadline of July 25, 2005, to submit the documentation.  (Id.)  Petitioner accepted the offer, but

4

the only documentation that was received was a letter from the Sheriff of the North Wilkesboro, North Carolina, Police Department. (Id.) Warden Felts states that on July 25, 2005, Petitioner was removed from the RDAP program as being unqualified. (Id.)

## ANALYSIS

### I.     Jurisdiction

District Courts are limited to granting *habeas* relief "within their respective jurisdictions." 28 U.S.C. § 2241(a); United States v. Little, 392 F.3d 671, 680 (4th Cir. 2004). In Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 495, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), the Supreme Court explained that 28 U.S.C. § 2241 "requires nothing more than [the] court issuing the writ have jurisdiction over the custodian." Therefore, "[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody . . . , he should name his warden as respondent and file the petition in the district of confinement." United States v. Little, 392 F.3d at 680(citing Rumsfeld v. Padilla, 542 U.S. 426, 447, 124 S.Ct. 2711, 2724, 159 L.Ed.2d 513 (2004)). In this case, Petitioner instituted this action while incarcerated in FCI Beckley in Beaver, West Virginia. While the instant action was pending before this Court, however, he was transferred to Lexington, FMC, which is located in Lexington, Kentucky.[3] In the context of a *habeas corpus* proceeding, "[t]he writ does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. at 494-95, 93 S.Ct. at 1129, 35 L.Ed.2d 443 (1973). In this case, by virtue of Petitioner's transfer, the undersigned finds that Petitioner is no longer in custody at FCI Beckley. He is now incarcerated in Kentucky and

---

[3] According to the BOP's Inmate Locator, Petitioner's projected release date is July 1, 2007.

beyond this Court's jurisdiction. The undersigned believes that the best course of action under the circumstances is to determine whether Petitioner's claim has merit. If so, the undersigned should recommend the transfer of this matter to the United District Court for the Eastern District of Kentucky. If not, the undersigned should recommend dismissal.

**II.**   **RDAP**

Title 18, U.S.C. § 3621(b), authorizes the BOP to implement drug abuse treatment programs for its prisoners: "The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). To effectuate this mandate, the BOP is required to ensure that all "eligible prisoners" "with a substance abuse problem have the opportunity to participate in appropriate substance abuse treatment . . . [and the BOP shall] provide residential substance abuse treatment." 18 U.S.C. § 3621(e)(1). As an incentive for successful completion of RDAP, prisoners with non-violent offenses may receive a reduced sentence up to one year upon completion of the program. 18 U.S.C. § 3621(e)(2)(B). Section 3621, however, does not set forth the criteria for eligibility into the RDAP. Rather, the statute only defines "eligible prisoners" to mean those prisoners "determined by the Bureau of Prisons to have a substance abuse problem." 18 U.S.C. § 3621(e)(5)(B)(i). Thus, the BOP in its discretionary authority established criteria for determining eligibility into RDAP. Title 28, C.F.R. § 550.56(a) sets forth the following eligibility requirements:

> (a) Eligibility. An inmate must meet all of the following criteria to be eligible for the residential drug abuse treatment program.
>
> (1) The inmate must have a verifiable documented drug abuse problem.
> (2) The inmate must have no serious mental impairment which would substantially interfere with or preclude full participation in the program.
> (3) The inmate must sign an agreement acknowledging his/her program responsibility.

> (4) Ordinarily, the inmate must be within thirty-six months of release.
> (5) The security level of the residential program institution must be appropriate for the inmate.

28 C.F.R. § 550.56(a). The BOP also created Program Statement 5330.10 which incorporates the above five enumerated conditions and adds definitive language. With respect to the requirement that the inmate have a verifiable documented drug abuse problem, P.S. 5330.10, Chapter 5, Section 4.1, explains:

> Drug abuse program staff shall determine if the inmate has a substance abuse disorder by first conducting the <u>Residential Drug Abuse Program Eligibility Interview</u> followed by a review of all pertinent documents in the inmate's central file to corroborate self-reported information. The inmate must meet the diagnostic criteria for substance abuse or dependence indicated in the <u>Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV)</u>. This diagnostic impression must be reviewed and signed by a drug abuse treatment program coordinator.
>
> Additionally, there must be verification in the Presentence Investigation Report (PSI) report or other similar documents in the central file which supports the diagnosis. Any written documentation in the inmate's central file which indicates that the inmate <u>used</u> the <u>same substance</u>, for which a diagnosis of abuse or dependence was made via the interview, shall be accepted as verification of a drug abuse problem.

The BOP interprets Section 4.1 as requiring an inmate to provide documentation of a substance abuse problem during the 12 month period prior to incarceration.[4] An agency's interpretation, such as a program statement, is "entitled to respect" but only to the extent that the interpretation has the power to persuade. See Christensen v. Harris County, 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000); Cunningham v. Scibana, 259 F.3d 303, 307-06 (4th Cir. 2001).

Agency interpretations constitute a body of experience and informed judgment to

---

[4] Warden Felts explained in his response to Petitioner's administrative remedy request that "[t]he requirement for use of the substance during the year prior to incarceration derives from the DSM-IV course specifiers located on page 196, which identifies 'Sustained Full Remission,' defined as 'none of the criteria for Dependence or Abuse have been met any time during a period of 12 months or longer.'" *See* Doc. 1, Exhibit I.

7

> which courts and litigants may properly resort for guidance. "The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."

Cunningham, 259 F.3d at 306-07 (*quoting* Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).

The undersigned finds that the BOP's interpretation of § 3621 and P.S. 5330.10 requiring a prisoner to demonstrate a substance abuse problem within 12 months prior to incarceration is a permissible exercise of the broad discretion Congress granted to the BOP to administer the RDAP. This interpretation is consistent with the express language of § 3621 and is not in direct conflict with the language of P.S. 5330.10; the interpretation clarifies and explains the eligibility requirements for RDAP admission. See Laws v. Barron, 348 F.Supp.2d 795, 806 (E.D. Ky. Sept. 15, 2004)("the BOP's interpretation of the term in 18 U.S.C. § 3621(e)(5)(B), 'a verifiable documented substance abuse program,' to require documentation of alcohol abuse in the 12 months prior to incarceration does not contravene well settled case law"); Goren v. Apker, 2006 WL 1062904 (S.D.N.Y. April 20, 2006)("Even if BOP had adopted a policy, practice, or rule requiring a manifestation of the substance abuse problem within 12 months prior to incarceration and a reference in the PSR, such action would be a permissible exercise of the broad discretion Congress granted to BOP to administer RDAP."). Accordingly, the undersigned finds that the BOP's interpretation neither violates any statutory or constitutional provision, nor is in conflict with any rule, regulation or program statement and therefore, the District Court is without subject matter jurisdiction to review the determination that Petitioner is ineligible for RDAP because he does not have a documented drug abuse problem within 12 months prior to his incarceration.

To the extent that Petitioner is claiming that the BOP violated his due process rights by finding him ineligible to participate in RDAP, Petitioner's claim is without merit because federal prisoners have no constitutional or inherent right to participate in rehabilitative programs while incarcerated. See Moody v. Daggett, 429 U.S. 78, 88, n. 9, 97 S.Ct. 274, 279, n. 9, 50 L.Ed.2d 236 (1976)("[N]o due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement to invoke due process."). Likewise, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz, 442 U.S. at 7, 99 S.Ct. at 2104; see also, Meachum v. Fano, 427 U.S. 215, 225, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976)("[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty."). Title 18, U.S.C. § 3621(e) however, vests the BOP with broad discretionary authority to reduce, by up to one year, the sentence of a federal prisoner convicted of a nonviolent offense, upon the successful completion of a substance abuse treatment program.[5] 18 U.S.C. §

---

[5] 18 U.S.C. § 3621(e)(2) provides as follows:

**(2) Incentive for prisoners' successful completion of treatment program. –**
    **(A) Generally.** – Any prisoner who, in the judgment of the Director of the Bureau of Prisons, has successfully completed a program of residential substance abuse treatment provided under paragraph (1) of this subsection, shall remain in the custody of the Bureau under such conditions as the Bureau deems appropriate. If the conditions of confinement are different from those the prisoner would have experienced absent the successful completion of the treatment, the Bureau shall periodically test the prisoner for substance abuse and discontinue such condition on determining that substance abuse has recurred.

3621(e); see also Lopez v. Davis, 531 U.S. 230, 232, 121 S.Ct. 714, 718, 148 L.Ed.2d 635 (2001). The language of this statute which provides that a prisoner's sentence "may be reduced by the [BOP]," is clearly permissive; the statute does not *mandate* that the BOP reduce a prisoner's sentence upon completion of the substance abuse treatment program.[6] See Lopez v. Davis, 531 U.S. 230, 240, 121 S.Ct. 714, 721, 148 L.Ed.2d 635 (2001)(Affirming that the BOP "may exclude inmates whether categorically or on a case-by-case basis, subject of course to its obligation to interpret the statute reasonably, in a manner that is not arbitrary or capricious." (Citations omitted.)); Downey v. Crabtree, 100 F.3d 662, 670 (9th Cir. 1996)(Finding that 18 U.S.C. § 3621(e)(2)(B) "reflects unequivocal congressional intent to leave to the Bureau final decisions regarding whether to grant eligible inmates a sentence reduction following successful completion of a drug-treatment program."). Thus, as to substance abuse treatment programs, the BOP has wide discretion in determining both whether an inmate enters such a program in the first instance and whether to grant or deny eligible inmates a sentence reduction under § 3621(e). See Pelissero v. Thompson, 170 F.3d 442, 444 (4th Cir. 1999). Courts have consistently held that inmates who successfully complete substance abuse treatment programs do not have a liberty interest in the provisional early release date and suffer no deprivation of due process rights as a result of the recission of their consideration for

---

**(B) Period of custody.** – The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

[6] It should be noted here that the BOP is required to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). This obligatory command, however, does not extend to the granting of the incentive-based reduction of a prisoner's sentence for the successful completion of the substance abuse program.

early release. See Zacher v. Tippy, 202 F.3d 1039, 1041 (8th Cir. 2000)("The language of section 3621(e)(2)(B) is permissive, stating that the Bureau 'may' grant early release, but not guaranteeing eligible inmates early release."); Wottlin v. Fleming, 136 F.3d 1032, 1035 (5th Cir. 1998). Accordingly, the undersigned finds that Petitioner's claims are without merit and recommends that the District Court deny his Application for *habeas* relief.[7]

### PROPOSAL AND RECOMMENDATION

Based on the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual and legal analysis and conclude that the District Court has no jurisdiction to consider the issue presented by Petitioner's request for *habeas* relief as Petitioner has been transferred to Lexington FMC and that the circumstances do not warrant the transfer of the instant action to the Eastern District of Kentucky. Accordingly, it is hereby respectfully **RECOMMENDED** that the District Court **DENY** Petitioner's Letter/Motion seeking an injunction against the BOP (Doc. No. 1.) and remove this matter from the Court's docket.

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Petitioner shall have thirteen days from the date of filing of this Findings and Recommendation within which to file with the Clerk of this

---

[7] The undersigned further notes that it does not appear that Petitioner had fully exhausted his administrative remedies at the time he instituted this action. Petitioner indicates in his letter/motion for injunctive relief that he "is now filing his BP-10, but due to the inordinate delays caused by this administrative process which is inevitably fruitless anyways, the Petitioner now finds himself several months behind on his RDAP classes, and makes this entreat to this court, lest he lose all the progress he has made with the RDAP cohort from April to the July expulsion." (Doc. No. 1 at 3.)

Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Petitioner who is acting *pro se*.

ENTER: September 19, 2006.

R. Clarke VanDervort
United States Magistrate Judge

12